**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TROY COLEMAN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-3599** |
| | : | |
| **KENNETH EASON, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**GALLAGHER, J.** **August 3, 2026**

Plaintiff Troy Coleman, a prisoner currently incarcerated at SCI Phoenix, filed this civil rights action pursuant to 42 U.S.C. § 1983, claiming that the Defendants—Superintendent Kenneth Eason, Security Captain Eason, Deputy of Security Aponte, Major Davies, Inmate Employment Supervisor Novak (collectively, the "Commonwealth Defendants"), Dr. Paul Gregory Little, John Nicholson (collectively, the "Medical Defendants"),[1] and two John Doe Defendants[2]—were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment while he was incarcerated at SCI Chester. The Commonwealth Defendants and Medical Defendants have filed Motions to Dismiss (ECF Nos. 33, 42), to which Coleman

[1] The Court will use the spellings and titles that the Defendants have provided in their respective motions, rather than those listed in the Complaint.

[2] Coleman appears to name a physical therapist and SCI Chester staff member as "John Doe" defendants. (Compl. at 5, 7.) He also initially referenced a "Dr. John Doe" and "PA John Doe" in the heading of his Complaint, but did not name Dr. Little and Nicholson. (*Id*. at 1.) The Court understood Dr. Little to be "Dr. John Doe" and "PA John Doe" to be Nicholson and directed the Clerk of Court to add them as defendants in this case. (ECF No. 27 at 2.) Coleman has not stated any opposition thereto and references Dr. Little and "PA" Nicholson as the medical defendants he brings his claims against throughout his filings. (See ECF Nos. 36, 51.)

has responded in opposition (ECF Nos. 36, 51). For the following reasons, the Court will grant the Motions and dismiss Coleman's Complaint.

## I. FACTUAL ALLEGATIONS[3] AND PROCEDURAL HISTORY

Coleman alleges the Defendants acted with deliberate indifference by failing to provide adequate medical treatment for an injury that occurred during the summer of 2020 while he was "working out in the yard at SCI Chester." (Compl. at 7.) He alleges he was "doing dips on a dip-bar" and "felt a pull in [his] right elbow, which caused [him] to stop the exercise immediately." (*Id.*) He requested medical treatment and was instructed to sign up for sick call. (*Id.*) Coleman was seen by Defendant Nicholson on October 5, 2020, and by Defendant Dr. Little on October 19, 2020. (*Id.*) He asserts after Dr. Little and Nicholson "clearly observed the atrophy in [his] right hand, the only ordered treatment was for [him] to see the physical therapist." (*Id.*) The physical therapist, identified as a John Doe defendant, allegedly gave him "run-off copies of some exercises to perform in [his] cell and nothing more." (*Id.*) During subsequent visits, Physical Therapist John Doe continued to give him the "run-off copies" and showed him "how to do said exercises and nothing more." (*Id.*) Coleman alleges he did not receive any further medical treatment for his "severe injury until abruptly being transferred out of SCI Chester" to SCI Somerset on August 5, 2021. (*Id.* at 7-8.)

Coleman claims he approached Defendants Superintendent Eason, Deputy of Security Aponte, and John Doe "on various times and dates" regarding his injury, showed them his hand, and conveyed he was experiencing pain and numbness. (*Id.* at 7.) At some point presumably

[3] The factual allegations set for in this Memorandum are derived from Coleman's Complaint ("Compl.") (ECF No 2), and the Court adopts the sequential pagination assigned by the CM/ECF docketing system.

after he was seen by the Medical Defendants, he also asked Superintendent Eason, Aponte, and John Doe "to re-contact the medical department in hopes that their authority would warrant immediate and adequate treatment," but his complaints "fell on deaf-ears." (*Id.*) He alleges he showed his "visible injuries to as many staff members as possible in hopes of getting medical attention," including Defendant Inmate Employment Supervisor Novak, who told him to stop complaining and that "your complaints is how people get kicked out of here." (*Id.* at 7-8.) He further alleges that Novak sought to have him transferred in retaliation for his complaints, which subsequently occurred when he was "abruptly transferred" to SCI Somerset on August 5, 2021. (*Id.* at 8.)

When Coleman arrived at SCI Somerset, he spent the first month in the Restricted Housing Unit ("RHU"), where he had issues with his blood pressure and was seen by a nurse. (*Id.*) He told the nurse about the pain and numbness in his right hand and elbow. (*Id.*) The nurse allegedly "gasped at the sight" of his hand and told him to see the doctor immediately after he was released from the RHU. (*Id.*) In September 2021, he was seen by Physician Assistant Roxy Playso, who arranged for him to be seen by an "outside doctor" after examining his hand. (*Id.*) He was subsequently examined by Dr. Eddy, presumably the outside doctor, on November 5, 2021,[4] and an electromyography ("EMG") test revealed he suffered from "chronic R. Ulnar Neuropathy at the elbow with no active denervation at rest but with significant axonal loss." (*Id.* at 8, 18.) An MRI was conducted on January 31, 2022, "which revealed a very serious injury in which SCI Chester delayed treatment for and obviously ignored." (*Id.* at 9.) He was required to undergo surgery for his injury on May 5, 2022. (*Id.*) He alleges that the delay in treatment he

[4] Although Coleman initially alleged the appointment was December 5, 2021, (Compl. at 8), his grievance and Response confirm the appointment was November 5, 2021, (*id.* at 18; *see also* ECF No. 51 at 5.)

experienced while at SCI Chester resulted in the build-up of scar tissue around the injury in his hand and that, despite his efforts to rehabilitate his arm and hand through prescribed exercises, he continues to experience pain, numbness, stiffness, and locking of his fingers.[5] (*Id.*)

Coleman also alleges he filed a grievance related to this incident when he "became aware of the gravity of [his] injury and Chester's negligence," (*id.* at 13), and fully exhausted his administrative remedies, (*id*. at 14). He attached the grievance packet to his Complaint. (*Id*. at 18-22.) The grievance packet reflects he filed his grievance on November 8, 2021, which was denied by the SCI Chester Grievance Coordinator because it "was not submitted within fifteen (15) working days after the events upon which the claims are based." (*Id.* at 18-19.) He appealed the initial denial of his grievance, explaining he "did not find out the gravity of [his] injury until [he] was sent out for an EMG" on November 5, 2021, and discovered he needed surgery. (*Id*. at 20.) He further notes he filed the grievance three days after receiving this information. (*Id*.) The documents further reflect that SCI Chester's Superintendent, Defendant Eason, upheld the denial of his grievance, which Coleman appealed to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (*Id*. at 21-22.) The Final Appeal Decision attached to his Complaint reflects that SOIGA's Chief Grievance Officer upheld the rejection of his grievance and dismissed his appeal. (*Id*. at 22.)

---

[5] Coleman passes reference to an unrelated medical issue related to his stomach and pattern of deliberate indifference. (Compl. at 9.) He does not state any factual allegations about this unrelated medical issue, such as when he had the stomach problems, if he was seen by the medical unit, and if so, who was involved. (*Id*.) He also concedes he did not file a grievance related to this issue. (*Id*.) It does not appear he intended to bring a separate claim for his stomach issue and provided this information for background only. Regardless, these general passing references are insufficient to bring a claim before the Court based on any medical issues with his stomach. *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

Coleman alleges that the sub-standard care he received violates the Eighth Amendment's prohibition against deliberate indifference to a prisoner's serious medical needs. (*Id*. at 4, 9.) He also asserts that his transfer from SCI Chester to SCI Somerset was arranged by Defendants in retaliation for his complaints about his medical treatment, in violation of his First Amendment rights and Fourteenth Amendment due process rights. (*Id*. at 4, 10). He requests money damages. (*Id*. at 11.)

In a Memorandum and Order dated August 16, 2024, the Court granted Coleman leave to proceed *in forma pauperis* and dismissed his Complaint in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (ECF Nos. 13, 14). However, the Court subsequently granted his motion for reconsideration and vacated its prior Order "limited to his Eighth Amendment claim for deliberate indifference to his serious medical needs" because it is "no longer clear from the face of the Complaint if this claim is barred by the statute of limitations."[6] (ECF No. 27 at 1, n.1). The Court then directed service of the Complaint so the Defendants could respond to the Eighth Amendment claims.

The Commonwealth Defendants filed a motion to dismiss arguing the official capacity claims against them are barred by the Eleventh Amendment, and the Eighth Amendment claims should be dismissed for failure to state a claim because they are not medical providers and cannot be held liable for deliberate indifference to a serious medical need. (ECF No. 33.) The Medical Defendants argue the claims against them should be dismissed on procedural grounds, or in the alternative, for failure to state a claim. (ECF No. 42-2.)

[6] The dismissal was not vacated as to Coleman's First Amendment retaliation claim and Fourteenth Amendment due process claim. (ECF No. 27 at n.2).

## II. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up),

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

Dismissal of a complaint based on an affirmative defense, such as a failure to exhaust or based on the statute of limitations, is only appropriate at the pleading stage when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "[W]hile a court may entertain a motion to dismiss on [affirmative defenses], it may not allocate . . . [burdens] . . . in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). Rather, the burden of pleading and proving an affirmative defense is borne by the defendant. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).

## III. DISCUSSION

Coleman asserts violations of his constitutional rights. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also, Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Although a court can infer that a defendant had contemporaneous knowledge

of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995)).

**A. Official Capacity Claims**

The Commonwealth Defendants move to dismiss Coleman's claims for damages against them in their official capacities as barred by the Eleventh Amendment. (ECF No. 33 at 7-9.) They also argue that the official capacity claims for damages are barred because state employees in their official capacities are not "persons" subject to liability under § 1983. (*Id.* at 10.)

Official capacity claims are indistinguishable from claims against the governmental entity that employs the Commonwealth Defendants, which is the Commonwealth here. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs*., 436 U.S. 658, 690, n. 55 (1978))). Thus, § 1983 claims against the Defendants in their official capacity are really claims against the Commonwealth, which is shielded from such claims by Eleventh Amendment immunity[7] and, in any event, is not considered a "person" subject to liability under § 1983. *See Downey v. Pa. Dep't. of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *see also Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of

[7] To avoid the bar of the Eleventh Amendment, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 (1984)). Because Coleman seeks money damages for his claims, this exception does not apply to his case.

Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). Accordingly, the Court will grant the Commonwealth Defendants' motion to dismiss Coleman's claims against them in their official capacities.[8]

**B. Statute of Limitations**

Section 1983 claims, such as those brought by Coleman, are subject to the statute of limitations for personal injury actions in the state where the action is brought. *See Wallace v.*

---

[8] It appears Coleman intended to sue the Medical Defendants in their respective individual and official capacities as well. (Compl. at 4.) Neither the Medical Defendants nor Coleman addressed these claims in their respective briefings. It does not appear the Medical Defendants are employees of the Commonwealth since the Commonwealth's attorney stated in its motion that a private entity provides medical care in the Department of Corrections ("DOC") facilities, such as SCI Chester. (ECF No. 33 at 14.) Regardless which private entity the Medical Defendants work for, the "official capacity" claims against the Medical Defendants are not cognizable. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit" (citing *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F. Supp. 2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit."))). Even if official capacity suits against individuals who work for private companies were cognizable, the suit would, in effect, be one against the company for whom that individual works. *See Graham,* 473 U.S. at 105. Since Coleman has not attempted to name that entity, the official capacity claims against the Medical Defendants are dismissed. *Accord Burk v. West*, No. 21-4968, 2021 WL 5758945, at *2 (E.D. Pa. Nov. 24, 2021).

Even had Coleman named the entity that Medical Defendants work for, he has failed to plead facts to support any *Monell* claim against it. *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (finding that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"); *see also Natale*, 318 F.3d at 583-84 (holding in order to hold a private health care company liable for a constitutional violation under § 1983, a prisoner must allege facts showing the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997))).

*Kato*, 549 U.S. 384, 387 (2007). In Pennsylvania, that limitations period is two years. *See* 42 Pa. Cons. Stat. § 5524. A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). This is consistent with Pennsylvania's "discovery rule," which delays the running of the statute of limitations where "despite the exercise of reasonable diligence," a plaintiff cannot know that he is injured and by what cause. *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).

The Medical Defendants argue that Coleman's retaliation and medical indifference claims are time barred. (ECF No. 42-2 at 11-14.) Coleman responds in opposition that his medical indifference claims are not time-barred because he did not find out the extent of his injury until he received adequate treatment at SCI Somerset on November 5, 2021. (ECF No. 51 at 3-4.) As Coleman correctly states in his opposition related to the retaliation claims, the Court has already dismissed those claims in its prior Memorandum and Order dated August 16, 2024. (ECF Nos. 13, 14.) The Court found his claims alleging retaliation in violation of the First Amendment and his Fourteenth Amendment due process claim were time barred, as follows:

> Based on the allegations pertaining to Coleman's retaliation claim, it is clear from the face of the Complaint that Coleman knew or should have known of any possible constitutional injury at the time he was transferred to SCI Somerset on August 5, 2021. Here, Coleman signed his Complaint on September 5, 2023, and it was subsequently filed on September 13, 2023. As both dates more than two years after the last action relevant to his claim, his retaliation claim is time-barred. *See Mattis v. Dohman*, No. 05-0465, 2007 WL 1314891, at *3 (E.D. Pa. May 4, 2007) (granting motion to dismiss where retaliation claim accrued on date of last adverse action relevant to claim and complaint filed more than two years later was time-barred).

ECF No. 13 at 6.

Thus, it is not necessary to address the Medical Defendants' arguments in support of dismissing those claims.

As discussed, the Court also dismissed his deliberate indifference claims as time-barred (*id.*), but subsequently granted Coleman's motion for reconsideration and vacated its prior Order "limited to his Eighth Amendment claim for deliberate indifference to his serious medical needs" because "it is no longer clear from the face of the Complaint if this claim is barred by the statute of limitations." ECF No. 27 at 1, n.1.

"[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations . . . ." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). However, as mentioned, the discovery rule may operate to delay the running of the statute of limitations "where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct." *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018). The discovery rule is one of "inquiry notice." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 249 (Pa. 2021). "As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Fine*, 870 A.2d at 859. "The party claiming the benefit of the discovery rule has the burden of demonstrating that it applies, and must establish reasonable diligence in investigating his or her physical condition, with 'reasonableness' considered under an objective standard." *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 547 (3d Cir. 2007) (citation omitted); *see also Am. Builders Ins. Co. v. Keystone Insurers Grp., Inc.*, No. 23-2606, 2024 WL 3898614, at *1 (3d Cir. Aug. 22, 2024) ("The party seeking to invoke the discovery rule bears the burden of establishing the inability to

know of the injury despite the exercise of reasonable diligence." (quoting *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997))).

"[T]he question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law." *Nicolaou*, 195 A.3d at 893 (citations omitted); *see also Fine*, 870 A.2d at 858 ("[W]hen a court is presented with the assertion of the discovery rules application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause."). This "is not an absolute standard but, rather, is 'what is expected from a party who has been given reason to inform himself of the facts upon which his right of recovery is premised.'" *In re Risperdal Litig.*, 223 A.3d 633, 640 (Pa. 2019). "Demonstrating the expected diligence requires a plaintiff to establish a display of 'those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests and the interests of others.'" *Knopick v. Connelly*, 639 F.3d 600, 611 (3d Cir. 2011) (quoting *Wilson v. El-Daief*, 964 A.2d 354, 363 n.6 (Pa. 2009)). Courts may apply the discovery rule as a matter of law where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause." *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 279 (Pa. Super. Ct. 2016).

The Medical Defendants argue Coleman knew the extent of his medical treatment received at SCI Chester related to his medical indifference claims, at the latest, on August 5, 2021, when he was transferred to SCI Somerset. (ECF No. 42-2 at 11-14.) Coleman argues that the running of the statute of limitations should be tolled under the discovery rule until November 5, 2021, because on that date, he had a medical examination that made him aware of the extent of his injury. (ECF No. 51 at 3-4.) The discovery rule applies to the medical indifference claims

against the Defendants at this stage of the proceedings because it is not clear from the face of the Complaint that these claims are time barred. The Complaint raises a reasonable question as to when Coleman discovered the extent of his injury. The Medical Defendants recommended physical therapy for his injury, and Coleman subsequently was seen by the physical therapist and received exercises to conduct. He exercised reasonable diligence to find out the extent of his injury by requesting medical attention after his injury and following the Medical Defendants' recommendation for physical therapy. Coleman did not know the extent of his injuries until he received the EMG testing on November 5, 2021. He was unable to choose a different doctor or get a second opinion based on his incarceration. Because he filed his Complaint on September 13, 2023, and his medical indifference claims against the Defendants did not accrue until November 5, 2021, the claims were timely filed within the two-year limitations period and are not time-barred from the face of the Complaint.[9] *See Fine*, 870 A.2d at 861 (concluding that

[9] Additionally, an inmate is entitled to tolling while he exhausts administrative remedies as required by the Prison Litigation Reform Act. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies."). In his Complaint, Coleman alleges that he exhausted administrative remedies as to his deliberate indifference claim and attaches copies of the relevant grievance and appeals as exhibits to his Complaint. (Compl. at 13-14, 18-23.) The possibility of tolling during exhaustion is another reason why dismissal is inappropriate at this time. *See Okey v. Eshbach*, No. 26-1269, 2026 WL 1453169, at *1 (3d Cir. May 22, 2026) (*per curiam*) ("A court may sua sponte dismiss an untimely complaint if 'it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard on the issue.'" (quoting *Vazquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009))). Although the Court did not previously address tolling in its dismissal of Coleman's retaliation-related claims, it is worth noting that the grievances he repeatedly relies on to establish exhaustion do not include an accusation of retaliatory transfer. (Compl. at 18-23; ECF No. 18); *see Heath v. Link*, 787 F. App'x 133, 137 (3d Cir. 2019) (*per curiam*) ("Because Heath was able to file an initial grievance and did not raise the issue of the religious materials in that grievance, he did not exhaust his available, administrative remedies with respect to this claim."). The failure to grieve his retaliation claim further confirms the Court's prior dismissal, because it reflects he would not be entitled to tolling on that basis.

factual questions about when plaintiff fully understood the cause and nature of his injury precluding granting summary judgment and that fraudulent concealment based on doctor's statements also potentially tolled the statute of limitations); *see also In re Risperdal Litig.*, 223 A.3d at 640-41 ("[T]his Court has expressly declined to hold, as a matter of law, that a layperson may be charged with knowledge greater than that which was communicated to [him] by the medical professionals who provided treatment and diagnosis.").

**C. Exhaustion**

The Medical Defendants argue that Coleman failed to exhaust administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"). (ECF No. 42-2 at 15-17.) The PLRA "mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden County*, 728 F.3d 265, 268 (3d Cir. 2013); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is a non-jurisdictional "standard affirmative defense." *Perttu v. Richards*, 605 U.S. 460, 469 (2025). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *see also Prater v. Dep't of Corr.*, 76 F.4th 184, 203 (3d Cir. 2023) (courts "determine whether a prisoner has properly exhausted a claim by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances" (internal quotations omitted)). Claims that are not properly exhausted under the PLRA are procedurally defaulted. *See Woodford*, 548 U.S. at 92-93. "[W]here a defendant moves to dismiss based on a failure-to-exhaust defense and the exhaustion issue turns on indisputably authentic documents related to the inmate's grievances, [a court] may consider

those documents without converting a motion to dismiss to a motion for summary judgment." *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018).

The DOC's applicable grievance policy, DC-ADM 804, sets forth a three-step process for review of inmate grievances.[10] An inmate must initially submit a written grievance to the Facility Grievance Coordinator or his designee within fifteen working days after the event upon which the grievance is based. DC-ADM 804, § 1.A(5), (8). The Facility Grievance Coordinator has permission to consider extensions "on a case-by-case basis," including due to temporary transfers, if the inmate notifies the coordinator "of the reason for the delay." *Id.* § 1.C(2). The grievance must state the date, approximate time and location of the events giving rise to the grievance, must identify individuals directly involved in the events, and shall state any claims the inmate wishes to make based on those events. *Id.* § 1.A(11). An inmate has fifteen working days to appeal a rejected grievance in writing to the Facility Manager. *Id.* § 2.A(1)(a). If the Facility Manager rejects the appeal, the inmate may appeal for Final Review with the SOIGA within fifteen working days of the denial of the Facility Manager's appeal. *Id.* § 2.B. The SOIGA will respond to the Final Appeal within thirty working days of receipt "unless otherwise extended and/or referred." *Id.* § 2.B(2) (emphasis omitted).

The Medical Defendants do not dispute the authenticity of the grievance packet Coleman attached to his Complaint, which reflects he filed his grievance on November 8, 2021, and it was initially denied by the SCI Chester Grievance Coordinator because it "was not submitted within fifteen (15) working days after the events upon which the claims are based." (Compl. at 18-19.)

---

[10] The Medical Defendants appended a copy of DC-ADM 804 to their Motion. (ECF No. 42-4.) The policy is also available online at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (last visited July 30, 2026).

Coleman appealed the initial denial of his grievance, explaining he "did not find out the gravity of [his] injury until [he] was sent out for an EMG" and discovered he needed surgery on November 5, 2021, and filed the grievance three days after receiving this information. (*Id*. at 20.) Superintendent Kenneth Eason upheld the denial of his grievance, which Coleman appealed to the SOIGA. (*Id*. at 21.) In the Final Appeal Decision, SOIGA's Chief Grievance Officer upheld the rejection of his grievance and dismissed his appeal. (*Id*. at 22.)

The Medical Defendants argue Coleman failed to properly exhaust because he did not comply with DC-ADM 804's requirements that he file his grievance within fifteen working days of the underlying events. (ECF No. 42-2 at 16-17.) Coleman argues that there was no grievance available for him to file within fifteen days of the initial examinations conducted by the Medical Defendants in 2020 because he did not know the extent of his injury at the time and they assured him "that there was nothing wrong with him." (ECF No. 51 at 3.) He asserts he filed his grievance immediately after he discovered the extent of his injuries, which was after he received "proper x-rays and testings" that the Medical Defendants "failed to do or have done." (*Id*.)

Whether a grievance process is "available" depends on whether it is "capable of use for the accomplishment of a purpose," "accessible[,] or may be obtained." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotations omitted). An administrative procedure is unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

The Court rejects the Medical Defendants' argument that Coleman failed to exhaust because he did not timely file his grievance because it is not clear at this stage of the proceedings that the grievance process was available to Coleman when he was initially seen at SCI Chester by the Medial Defendants. Coleman's grievance and constitutional claims are predicated on his allegation that the care he received at SCI Chester in 2020 was so inadequate, he did not discover the extent of his injuries and need for surgery for his injury until November 2021, and that the delay in treatment resulted in the build-up of scar tissue in his hand causing him pain. (Compl. at 8-9.) There is no way Coleman could have filed a grievance capturing his deliberate indifference claims against the Medical Defendants within fifteen working days of the dates of the initial medical examinations in 2020 because at those times he had no reason to know the extent of his injury, or that he would ultimately need surgery. As Coleman points out, he did not have an available grievance to file after the initial medical examinations because he did not know the Medical Defendants failed to recommend surgery or that his hand was damages by scar tissue build up. (ECF No. 51 at 3.) However, he did file his grievance within three days of the date he found out the severity of his injury. Under such circumstances, he was required to seek an extension to file his grievance belatedly in accordance with the DOC's grievance procedures once those procedures became available to him. *See Talley v. Clark*, 111 F.4th 255, 263 (3d Cir. 2024) ("Because a request to extend or be excused from the 15-day deadline for filing a grievance is explicitly included as part of the Pennsylvania DOC's grievance procedures, a prisoner must request permission to file an untimely grievance under § 1.C.2 just as he must pursue the grievance itself."). However, although DC-ADM 804 contemplates extensions, it does not specify a particular procedure or time frame for seeking such an extension. *See* DC-ADM 804, § 1.C(2).

In his initial grievance, which was directed to the Facility Grievance Coordinator and filed within fifteen working days of the date he discovered the extent of his injuries, Coleman explained the circumstances behind his delay in filing. Specifically, he stated he did not discover he needed surgery for the 2020 injury after his November 5, 2021, medical appointment. (Compl. at 18.) He clarified the delay again when he appealed the initial denial of his grievance to the Superintendent, explaining he "did not find out the gravity of [his] injury until [he] was sent out for an EMG" and discovered he needed surgery on November 5, 2021. (*Id*. at 20.) Although he did not use the word "extension," Coleman's explanation "notif[ed] the Facility Grievance Coordinator/designee of the reason for the delay." DC-ADM 804, § 1.C(2). It is unclear why this was not treated as an extension request or what the basis was, if any, for concluding that this request did not comply with the extension policy. A prison has a "duty in the first instance to reasonably communicate its policies" to prisoners. *Hardy v. Shaikh*, 959 F.3d 578, 590 (3d Cir. 2020); *see also Small*, 728 F.3d at 271 ("Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes."). Absent further clarity or instruction regarding how he was supposed to properly file an extension, after reviewing the grievance records attached to Coleman's Complaint, which have not been disputed to be inauthentic or incomplete, the Court cannot conclude that Coleman failed to comply with the DC-ADM 804's timeliness and extension requirements. Thus, the Medical Defendants have failed to meet their burden to prove his failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (finding a failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs).

**D. Deliberate Indifference to Serious Medical Needs**

The Defendants all argue that Coleman has failed to state a plausible Eighth Amendment claim against them. To state an Eighth Amendment claim based on the failure to provide medical treatment, a prisoner must allege facts reflecting that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058 2023 WL 5814664 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id.* (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison

officials are afforded considerable latitude in the diagnosis and treatment of prisoners.”). “Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners.” *Durmer v. O’Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Inadequate care may nevertheless give rise to a deliberate indifference claim when a defendant “act[s] with the requisite state of mind when providing that inadequate care.” *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). However, “absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference.” *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

**1. Commonwealth Defendants**

The Commonwealth Defendants argue that as non-medical providers, they cannot be held liable for deliberate indifference to a serious medical need because Coleman alleges he was under the care of a medical doctor, and the Eighth Amendment claims against them should be dismissed. (ECF No. 33 at 11-14.) In his Complaint, Coleman claims he approached Defendants Superintendent Eason, Deputy Aponte, and John Doe “on various times and dates” regarding his injury, showed them his hand, and conveyed he was experiencing pain and numbness. (Compl. at 7.) He also asked Superintendent Eason, Aponte, and John Doe “to re-contact the medical department in hopes that their authority would warrant immediate and adequate treatment,” but his complaints “fell on deaf-ears.” (*Id.*) In his Response, Coleman argues that after he was seen by the Medical Defendants, he “showed his deformed hand to numerous DOC officials, including the Superintendent (Warden), Deputy Superintendent, Inmate Employment Supervisor, and others, explaining his pain and need for care.” (ECF No. 36 at 3.)

Although the exact times are unclear, he clarifies that "each Defendant"[11] observed his "visibly abnormal" hand, "yet failed to take any action to secure medical treatment." (*Id.*; *see also* Compl. at 7 (alleging Coleman approached "all" defendants on various dates and times).)

Claims based on inadequate medical care against the Commonwealth Defendants fail because Coleman alleges that he was under the care of medical staff at SCI Chester. In both his Complaint and Response, he alleges he was seen by both the Medical Defendants, who ordered physical therapy, and he was subsequently under the care of Physical Therapist John Doe. Courts have held that "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236. The Commonwealth Defendants are non-medical provider prison officials who were entitled to rely on the medical judgment of the doctors and other medical professionals who were treating Coleman. *See id.* ("Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor."); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be

---

[11] Defendants Captain Eason and Major Davies also argue that Coleman failed to allege personal involvement in Coleman's medical treatment. (ECF No. 33 at 10-11.) "When evaluating a motion to dismiss, a court may look to 'allegations contained in the other court filings of a pro se plaintiff' to clarify statements made in the complaint." *Helms v. Sorber*, No. 24-6928, 2026 WL 358286, at *5 n.4 (E.D. Pa. Feb. 9, 2026) (quoting *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992)); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 485 n.12 (3d Cir. 2000) ("[W]hile this case involves a motion to dismiss under Rule 12(b)(6), the Supreme Court . . . confirmed that we may use appellants' brief 'to clarify allegations in the complaint whose meaning is unclear.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000))). Based on Coleman's clarification in his Response that "each defendant" saw his hand in connection with his alleged inadequate medical treatment for his injury, the Court will liberally construe this allegation to be asserted against all Commonwealth Defendants, including Captain Eason and Major Davies, for purposes of this Memorandum only.

deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Coleman alleges that the Commonwealth Defendants observed the state of his hand but ignored his requests to "recontact" the medical department. But that does not necessarily mean they acted with deliberate indifference. It is not reasonable to infer that a layperson should intuit that medical professionals known to be treating an inmate's injury are providing constitutionally inadequate care simply because the injury looks shocking. *See Stewart v. Pennsylvania Dep't of Corr.*, 677 F. App'x 816, 819 (3d Cir. 2017) (*per curiam*) ("Stewart claimed that these Defendants, supervisory officials who do not participate in individual medical care decisions, simply failed to intervene in his medical care. Such a claim is not viable under the Eighth Amendment."). Thus, the deliberate indifference claims against the Commonwealth Defendants are not plausible,[12] and their motion to dismiss will be granted.

**2. Medical Defendants**

The Medical Defendants also argue for dismissal for failure to plausibly allege deliberate indifference. (ECF No. 42-2 at 19-22.) Coleman alleges that after he injured himself working out, he requested medical treatment for his injury and he was instructed to sign up for sick call. (Compl. at 7.) He was seen by Nicholson on October 5, 2020, and by Dr. Little on October 19,

[12] The Court recognizes there is no pending motion to dismiss filed by John Doe, who has not been identified or served. However, since Coleman is proceeding *in forma pauperis*, the Court may independently screen his Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). John Doe will also be dismissed for the same reasons as the Commonwealth Defendants as explained in this section.

2020. (*Id.*) He asserts after Dr. Little and Nicholson "clearly observed the atrophy in [his] right hand, the only ordered treatment was for [him] to see the physical therapist." (*Id.*) During his visits with Physical Therapist John Doe, Doe allegedly showed Coleman exercises to perform for his injury "and nothing more." (*Id.*) Coleman alleges he did not receive any further medical treatment for his "severe injury until abruptly being transferred out of SCI Chester" to SCI Somerset on August 5, 2021. (*Id.* at 7-8.) Unfortunately, the physical therapy was not successful, and after receiving an EMG test in November 2021, he ultimately had to have surgery for his injury. (*Id.* at 8-9.) Although he argues he was provided "no treatment at all!" (ECF No. 51 at 6), his allegations that Dr. Little and Nicholson ordered him to see a physical therapist, whom he ultimately saw, and that he received therapy exercises for his injury undermine that argument.[13]

Even under a liberal reading of the Complaint, Coleman has not alleged sufficient facts to raise a plausible inference of deliberate indifference against the Medical Defendants. While it is not clear whether he initially presented with a "serious" medical need, his condition worsened over time that resulted in the need for surgery, which the Court will assume is a serious medical need for purposes of the analysis. "[A] doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can . . . amount to deliberate indifference for purposes of the Eighth Amendment." *See Berry*, 604 F.3d at 441. However, "[i]n general, good-faith efforts to remedy the plaintiff's problems will prevent finding deliberate indifference, absent extraordinary circumstances. That is why, for example, when medical personnel examine and diagnose a patient, where they try to help but fail to live up to expectations, that is more

[13] It is also worth noting that, in his grievance, Coleman reports that he was prescribed medication, although he says it did not resolve his pain. (Compl. at 18.)

naturally described as negligence than indifference." *Moreno v. Bosholm*, 151 F.4th 543, 573-74 (4th Cir. 2025) (cleaned up). A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."); *see also Wesley v. Varand*, 505 F. App'x 91, 94 (3d Cir. 2012) (*per curiam*) ("[A]n accident or inadvertence or mere negligence does not [in itself] trigger the Eighth Amendment.") (citations omitted). Here, Coleman's allegations reflect that the Medical Defendants exercised their medical judgment and made a decision to treat Coleman's hand with physical therapy. Even if that decision was not the best medical course of action, it at most amounts to negligence.

In an effort to establish deliberate indifference, Coleman argues that the Medical Defendants should have prescribed x-rays, additional tests, or taken a different course of action. (ECF No. 51 at 1, 3.) Even if that is the case, decisions about which tests to order are generally considered medical judgments that, without more, do not support a deliberate indifference claim, even when a defendant acts erroneously or commits medical malpractice. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice."); *West v. Schultz*, No. 22-11541, 2025 WL 3123674, at *7 (11th Cir. Nov. 7, 2025) ("West has failed plausibly to allege an Eighth Amendment violation for deliberate indifference. As the Supreme Court explained in *Estelle*, the

doctors' alleged failure to order 'additional diagnostic' testing and more 'forms of treatment' were 'matter[s] for medical judgment' that did not constitute deliberate indifference."); *Johnson v. Cash*, 557 F. App'x 102, 104 (3d Cir. 2013) (*per curiam*) ("The record indicates that Johnson has, at most, a disagreement with the course of treatment being provided by the prison medical staff. The failure to perform x-rays or order additional diagnostic tests does not rise to the level of cruel and unusual punishment."); *McCluskey v. Vincent*, 505 F. App'x 199, 203 (3d Cir. 2012) ("There is no evidence the decision not to order an immediate biopsy or dermatology consultation was made with deliberate indifference to McCluskey's condition or was based on anything other than medical judgment. At best, McCluskey has presented evidence of a misdiagnosis and possible medical malpractice, and this is insufficient."); *Bramson v. Sulayman*, 251 F. App'x 84, 86 (3d Cir. 2007) (*per curiam*) ("Bramson's complaint makes clear that the defendants treated him on many occasions. He claims that those treatments proved ineffective and that defendants negligently failed to diagnose his heart condition, but those allegations do not state an Eighth Amendment claim.").

Notably, Coleman alleges he was only seen once by Dr. Little on October 19, 2020, and once by Nicholson on October 5, 2020. (Compl. at 7.) After they observed the atrophy in his hand, they ordered physical therapy and he was subsequently seen by Physical Therapist John Doe and received exercises for his injury. (*Id.*) He specifically points out he did not receive any further treatment at SCI Chester. (*Id.*) Although he may have disagreed with the prescribed course of treatment, or that physical therapy constitutes treatment in his opinion, nothing in Coleman's Complaint (or the arguments in his Responses) supports an inference that the Medical Defendants based their treatment recommendation for physical therapy on something apart from the exercise of medical judgment when they treated him, even if those decisions were based on

mistaken beliefs about the nature of his condition. In other words, taken as a whole, Coleman's factual allegations fall short of raising an inference that the Medical Defendants had reason to think that Coleman's injury was more severe, knew he needed surgery but declined to treat him, or that they were knowingly exposing him to other serious health risks at the time they made each of their treatment decisions, or otherwise acted with the requisite state of mind under the circumstances.[14] *See Dana v. Idaho Dep't of Corr.*, No. 23-35047, 2024 WL 2862581, at *1 (9th Cir. June 6, 2024) (affirming dismissal of deliberate indifference claims "based on the long delay" in receiving diagnosis: "Dana does not plausibly allege that—of the twenty-one defendants named in claim one and three who remain on appeal [several of whom attended only one treatment meeting]—any defendant knew of the severity of her circumstances and consciously disregarded that known excessive risk to her health."); *Reilly v. Vadlamudi*, 680 F.3d 617, 625 (6th Cir. 2012) ("The Complaint alleges Dr. Vadlamudi failed to: obtain and appreciate an appropriate medical history; obtain appropriate diagnostic studies; include malignant tumor in the diagnosis; promptly refer Plaintiff to or consult with a specialist; provide timely medical care; and ensure Plaintiff is evaluated by a physician. These allegations may support a state law

[14] Coleman also appears to pursue a deliberate indifference theory based on the delay of care. (ECF No. 51 at 6-7.) However, he has not described care prescribed by the Medical Defendants that was then delayed. To the contrary, the logical inference from Coleman's factual allegations is that the cause of his harm was the Medical Defendants' physical therapy treatment decision that did not resolve his medical issue. (*Id.* (arguing that because the Medical Defendants "refused to provide care and delayed medical treatment as a result, Coleman had a build-up of scar tissue in or around the area of the ulnar nerve, visible atrophy, an abundance of pain, and finally, surgery).); *see Stewart v. Pa. Dep't of Corr.*, 677 F. App'x 816, 20 (3d Cir. 2017) (*per curiam*) ("He also complained, however, about the timeliness of the interventions—that Defendants initially misdiagnosed his fracture, resulting in its delayed treatment. But such a diagnostic failure, at worst, amounts to medical malpractice, which is not actionable under the Eighth Amendment.").

claim for professional negligence, but under established law, deliberate indifference entails something more than mere negligence).[15] Because Coleman has not "nudged [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court will grant the Medical Defendants' motion and dismiss the deliberate indifference claims against them.[16]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions will be granted, and Coleman's

---

[15] It is unclear if Coleman intended to assert negligence claims, or other claims based on state law. In any event, because the Court will dismiss his federal claims as explained throughout this Memorandum, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). Coleman appears to be a resident of Pennsylvania, and lists a Pennsylvania address for several of the defendants, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

[16] As mentioned, the Court may independently screen the Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown*, 941 F.3d at 662. The claims alleged against Physical Therapist John Doe for medical indifference will also be dismissed for the same reasons as the Medical Defendants as explained in this section.

Complaint will be dismissed.[17] Because Coleman cannot cure the defects in his claims, leave to amend will not be given as any attempt to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

An appropriate Order dismissing this case will be entered separately. *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**

[17] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his complaint once as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim." Coleman chose not to amend his Complaint in response to Defendants' Motions to Dismiss, opting instead to brief the motions and adjudicate the issues. The Court is not required to give him another chance to plead his claims because he has have already had an opportunity to cure deficiencies in his pleadings. See *Emery v. American General Finance, Inc*., 134 F.3d 1321, 1323 (7th Cir. 1998). Additionally, Coleman has discussed the claims alleged in his Complaint numerous times throughout this case in his motion for reconsideration and responses to Defendants' Motions. (ECF Nos. 18, 36, 51.) He has had ample opportunities to clarify the factual allegations, yet he has not given any indication that he could, in fact, successfully amend his Complaint to cure the defects identified above, even if given the opportunity to do so. Accordingly, the Court, in its discretion, dismisses Coleman's claims with prejudice.